FILED ____ LODGED
RECEIVED ____ COPY

JAN 21 2026

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Nancy Bourke
P.O. Box 244
Sierra Vista, AZ 85636
(302) 792-7999 (cell)
nbourke36@gmail.com
(*pro se*)

IN THE UNITED STATE DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| NANCY BOURKE,<br>An unmarried woman,<br>　　　　　Plaintiff,<br>vs<br>AMY HUNLEY,<br>A married woman, in her individual capacity<br>AND in her official capacity as the Elected<br>Clerk of the Cochise County Superior Court;<br><br>Cochise County, Arizona;<br><br>ROGER CONTRERAS,<br>A married man;<br><br>DANETTE R. PAHL,<br>A married woman;<br><br>JOAN SACRAMENTO,<br>An unmarried woman,<br><br>Defendants . | Case No. CV-26-00039-TUC-RM<br><br>COMPLAINT<br><br><br>DEMAND FOR JURY TRIAL |

## **INTRODUCTION**

1. This Complaint results from public officials, local governments, and private citizens working in concert, under color of law, to suppress Plaintiff's speech, deny Plaintiff procedural and substantive Due Process, and deny Plaintiff Equal Protection under our well-established laws. Defendants have explicitly required Plaintiff to self-censor. Defendants have explicitly forbid Plaintiff from participation in court proceedings and

1

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

**Defendant No. 1** ̶ #2

Name: Amy Hunley

Job or Title *(if known)*: Cochise County Clerk of the Superior Court

Street Address: 100 Quality Hill Drive

City and County: ~~Cochise~~ Bisbee, AZ 85603

State and Zip Code: (Cochise County)

Telephone Number: (520) 432-8600

E-mail Address *(if known)*: ahunley@cochise.az.gov

**Defendant No. ~~2~~ 3**

Name: Cochise County

Job or Title *(if known)*: c/o Clerk of the Board of Supervisors

Street Address: 1415 Melody Lane

City and County: Bisbee — Cochise

State and Zip Code: AZ 85603

Telephone Number: (520) 432-922~~—~~

E-mail Address *(if known)*: ~~x~~

**Defendant No. ~~3~~ 4**

Name: Roger H. Contreras

Job or Title *(if known)*: (married individual)

Street Address: 4489 Desert Springs Trail

City and County: Sierra Vista — Cochise

State and Zip Code: AZ 85635

Telephone Number: (520) 4

E-mail Address *(if known)*: rhogv@gmail.com

**Defendant No. ~~4~~ 5**

Name: Danette Pahl.

Job or Title *(if known)*: (married individual)

Street Address (at business): 6400 E. Tanque Verde - Pima

City and County: Tucson - Pima

State and Zip Code: AZ 85715

Telephone Number: (520) 628-1111

E-mail Address *(if known)*: dlrpahl @ att. net

Pro Se 1 (Rev. 12/16) Complaint for a Civil Case

Defendant No. ~~1~~ ~~5~~ 6 NB

    Name                            Joan Sacramento
    Job or Title *(if known)*        (unnamed individual)
    Street Address                  1312 N. Avenida Marlene
    City and County                 Tucson, AZ 85715 - Pima
    State and Zip Code              AZ
    Telephone Number                (520) 603-7086
    E-mail Address *(if known)*      Sacramento, MSW, jd@gmail.com

Defendant No. ~~2~~ 6        N/A

    Name                            _____
    Job or Title *(if known)*        _____
    Street Address                  _____
    City and County                 _____
    State and Zip Code              _____
    Telephone Number                _____
    E-mail Address *(if known)*      _____

Defendant No. 3

    Name                            _____
    Job or Title *(if known)*        _____
    Street Address                  _____
    City and County                 _____
    State and Zip Code              _____
    Telephone Number                _____
    E-mail Address *(if known)*      _____

Defendant No. 4

    Name                            _____
    Job or Title *(if known)*        _____
    Street Address                  _____
    City and County                 _____
    State and Zip Code              _____
    Telephone Number                _____
    E-mail Address *(if known)*      _____

other official forums, whether she seeks affirmative relief, or where she simply attempts to defend herself or her children within any of the overlapping *ex parte* proceedings in which she is now regularly named a party, without so much as service of pleadings to Plaintiff. Defendants severely retaliate against Plaintiff retrospectively, contemporaneously, and prospectively, over a period of many years, when Plaintiff merely *requests* her well-established constitutional, statutory, and procedural rights. The most blatant retribution occurs when Plaintiff manages to overcome Defendants' obstacles long enough to actually *exercise* her constitutional rights equally to themselves and/or every other citizen who happens to be a litigant in court or other governmental proceedings. Defendants have imposed exponential harms upon Plaintiff, emboldened by seeing the as-applied consequences to Plaintiff overtake every aspect of Plaintiff's life and the lives of her children, while actual redress recedes into an abstraction for Plaintiff. This Complaint addresses both state-level and federal-level rights denied to Plaintiff by all named Defendants. Defendants have engaged in a pattern of blocking, preventing, chilling, and retaliating against Plaintiff for the exercise – or attempted exercise - of Plaintiffs' most basic civil rights, especially in those enshrined in the Arizona and U.S. constitutions. Defendants have systematically removed Plaintiff's traditional forums for speech, as well as procedural and substantive due process forums and rights. Retaliation against Plaintiff by these Defendants has primarily been enacted by preventing Plaintiffs' free speech in state-level courts and administrative proceedings, destroying all substantive areas of Plaintiff and her children's lives that trial-level state courts, administrators, and executives regularly handle, and punishing any attempts to exercise procedural Due Process anywhere. When appellate-level state courts unanimously denounce Defendants' unconstitutional measures against Plaintiff, Defendants simply ignore their authority and take Plaintiff back to lower-level tribunals, where the most practical damage is inflicted against Plaintiff, when Plaintiff is forced to trudge through appeal after feckless appeal, increasingly isolated, resourceless, and dispossessed of any actual relief from Defendants. Plaintiff has been effectively removed from state level fact-finding forums subject to – and charged with decision-making pursuant to – the rule of law. The

2

overwhelming conspiracy by Defendants to deprive Plaintiff of every imagine practical and legal right requires Plaintiff to seek relief from this Court.

## JURISDICTION AND VENUE

2.  The District Court has jurisdiction over this action pursuant to 28 U.S.C. §1331; 42 U.S.C. §§1983; 1988, *et. seq.*

3.  Venue is proper in the District of Arizona pursuant to 28 U.S.C. §1391(b);(c).

## PARTIES

4.  Plaintiff, Nancy Bourke, is an unmarried woman with two minor children, the eldest of whom is shared with Defendant Contreras. Plaintiff was the first in her immediate family of origin to graduate high school. Plaintiff pursued her deep interest in psychology that was first sparked in an advanced high school course in her hometown of Baltimore, MD. Plaintiff was nudged forward by that advanced placement psychology teacher to keep pursuing her education, despite financial obstacles. Plaintiff went on to earn her bachelor's degree in psychology, as well as a minor in French, from the only college to which she applied. During her senior year, Plaintiff took a sociology course that moved Plaintiff to further study the collective's thought processes, also. Plaintiff was particularly stricken by sociological disadvantages being sustained and exacerbated by systemic injustices within our American legal system. Plaintiff found what, at that time, was the only graduate program in the world to offer an accelerated graduate program whereby, after four years, a student could earn a Master's Degree in Clinical Psychology from the longest-running Clinical Psychology program in the world. For the "dual degree" program, at the end of the sixth year, keeping up with all academic and clinical work requirements of the law school and the psychology program, the idea was that the student would earn their J.D. and Psy.D., simultaneously, after earning the M.A. two years prior. After being one of only two applicants selected into the program in the year 2001, Plaintiff was the ***only*** graduate of this extraordinarily

3

rigorous academic and practical program in the year 2007. It appears to Plaintiff that as of the time of filing this Complaint, there are no remaining such programs anywhere[1]. Beyond completing the six clinical and legal externship rotations required on top of her academic work on separate campuses in different states, Plaintiff completed independent research requirements, and published a law review article. The clinical psychology dissertation research focused on a different minority group than what moved Plaintiff to pursue law after college. The publication was on the historical legal treatment of that minority group, and Plaintiff's predictions regarding future case law precedents aimed at protecting that group (Plaintiff predicted correctly as it turns out). Plaintiff went on to complete 500 hours of post-doctoral work, which had been expected of those applying for licensure as a Psy.D. Rather than pursue professional work in the field of psychology, Plaintiff decided to pursue law, which, at that time, Plaintiff believed could achieve more practical goals for clients, and more quickly than work as a psychologist. Plaintiff became a member of the State Bar of Arizona July 30, 2008. Plaintiff became pregnant with Defendant Contreras' child in the summer of 2009, which quickly forced Plaintiff to turn her attention away from the disadvantages groups she studied in college and graduate school, then professionally assisted in her career. Plaintiff and Defendant Contreras married in September, 2009. Almost immediately, Defendant Contreras ceased communications with Plaintiff and began a series of actions, many of which are subject to this Complaint, forcing Plaintiff, to this day, to remain exclusively focused on the disadvantages she and her children continue to face, rather than assisting other minority groups navigate these same systems. Plaintiff returned to live in Cochise County Arizona in the year 2010, to provide Defendant Contreras a close, in-person relationship with their unborn child when Contreras refused to live in an area where Plaintiff had independent resources and supports. Plaintiff continues to reside in Cochise County, AZ with her two children, where they have all three remained homeless for about a year at the time of this filing. For jurisdictional and venue purposes, Cochise County is Plaintiff's home.

---

[1] https://drive.google.com/file/d/1sE2jvQ4oofu5mQc3WQl3CtHpWYqwDH1k/view

4

5. Defendant Amy Hunley is a married woman, working and residing in Cochise County Arizona. Defendant Hunley is being sued by Plaintiff in both her individual capacity and in her official capacity as the Elected Clerk of the Superior Court for Cochise County, AZ. Defendant Hunley was elected to the office of Cochise County Clerk in 2018, taking office at the start of 2019, pursuant to Article 6, Section 23 of the Arizona Constitution. Defendant Hunley also listed herself as Treasurer of the AZ Court Clerk's Association throughout 2024. It is unknown to Plaintiff if Defendant Hunley still hold that position. Defendant Hunley submitted her PUBLIC OFFICER AND CANDIDATE FINANCIAL DISCLOSURE STATEMENT, showing, *at* p. 8, that she held the Treasurer position when she filed her Candidate Forms for re-election as the Cochise Clerk, on or about 1/5/25.

https://www.cochise.az.gov/ArchiveCenter/ViewFile/Item/777 (accessed 1/18/26).[2] Arizona Clerks of the Superior Court are charged with providing litigants access to trial-level Superior Court matters, as well as appellate-level lower court matters appealed to that Court, among other duties to ensure litigants' meaningful access to the Cochise County courts. Elected Clerks are subject to a Code of Conduct in Arizona, as well as state-level constitutional and statutory duties, all enacted to facilitate litigants' meaningful access to the court. Unlike judicial officers, elected Clerks have very few discretionary functions in Arizona. Most aspects of this elected position require strict adherence to ministerial and supervisory duties.

6. Defendant Cochise County, AZ is the County that hires, employs, trains, and supervises the employees in Defendant Hunley's Office, as well as various other County offices that have harmed Plaintiff within the scope of this Complaint. The Elected Clerk of Court, as well as Cochise County, itself, actively imposes and expands the harms caused

---

[2] "7. Office, Position or Fiduciary Relationship in Businesses, Nonprofit Organizations or Trusts What to disclose: The name and address of each business, organization, trust or nonprofit organization or association in which you or any member of your household held any office, position, or fiduciary relationship during the period covered by this Financial Disclosure Statement, including a description of the office, position or relationship."

5

by the individual Defendants upon Plaintiff from what could have remained "a few bad apples" to a years-long, County-wide proactive affair, resulting in proximate causation of particular governmental harms to Plaintiff. Though these injuries, by their nature, require suppression of facts from Plaintiff and vigorous court-supervised discovery procedures to uncover most relevant evidence, Plaintiff has already gathered many years' worth of documentation tending to show Cochise County employees becoming more entrenched in Plaintiffs' affairs over time, enacting and passing down policies, customs, decisions, patterns of behavior, and improper training and supervision to newer employees to be used against Plaintiff, specifically, throughout numerous County offices. Cochise County exceeds any "failure to train" or §1983 similar standard when it comes to the matters in this Complaint. In the actions involving Plaintiff, Cochise County issues unwritten policies against Plaintiff, and it uses employees in multiple departments at all levels, including department heads, to issue and enforce specified decisions against Plaintiff that result in unassailable, harmful policies specific to Plaintiff, widespread at this juncture. With little turnover in a rural county with few residents, Cochise County is able to – and does – enact these patterns of behavior quickly and entrench them deeply. Assuredly, Cochise County fails to properly train, screen, and supervise its employees when it comes to matters involving Plaintiff. However, Cochise County exceeds just failing to protect Plaintiff. Cochise affirmatively trains and supervises its employees TO harm Plaintiff. Cochise County uses unwritten policies, decisions by its policymakers, failures to train, screen, and supervise its employees, all in the name of causing Plaintiff particularized harm. Cochise County is liable to Plaintiff for §1983 and related harms, which Plaintiff will further describe in an abbreviated timeline, under her FACTS section.

7. Defendant Contreras is a married man. Defendant Contreras ceased communicating with Plaintiff other than through legal processes, judicial proceedings, law enforcement actions, regulatory actions, and similar coercive, contested means when she was still pregnant with the parties' only minor child in the year 2009. Contreras began his legal campaign to harm Plaintiff in earnest the literal hour Plaintiff completed her drive from

Baltimore, MD to Sierra Vista, AZ while seven months' pregnant with their child. Before Plaintiff could even obtain maintenance for the vehicle that she still drives today, after enduring an ice storm on the way to Baltimore, then driving all the way back to enhance Contreras' relationship with his child, and before finding a bed or stopping at any semblance of a home, Contreras had Plaintiff chased down by a process server to serve her with his dissolution proceedings in Cochise County Superior Court case DO200901390 (hereinafter, "1390"). Defendant has never communicated one-on-one with Plaintiff since and has remained the primary instigator of all of the harms to Plaintiff she has endured at the hands of all Defendants ever since. Defendant Contreras funneled Plaintiff into a multiple contested proceedings in systems he directs, in order to harm Plaintiff. Defendants have collectively contested every aspect of Plaintiff and her children's daily living, rendering Plaintiff unable to function on a practical level without permission of administrators, executives, elected officials, judges, and/or government employees. Over this same timeframe, Defendants have also banned and retaliated against Plaintiff for use of those same systems, whether "offensively" or "defensively." Plaintiff is both bound by official proceedings, and prohibited from participation in those same proceedings. Defendant Contreras resides in Cochise County, Arizona, separately from his wife, who also resides in Cochise County, Arizona.

8. Danette Pahl re-appeared as Defendant Contreras' "family law" attorney after he spent years earlier in 1390 switching attorneys quite a few times. Defendant Pahl's re-appearance in the "1390" case slightly pre-dated Defendant Sacramento's initial appearance therein. Once Defendant Pahl re-appeared, she personally took on many of the other Defendants' tasks in harming Plaintiff. To Plaintiff's knowledge, Defendant Pahl resides in Pima County, Arizona with her husband.

9. Joan Sacramento is, to Plaintiff's knowledge, an unmarried individual. Defendant Sacramento first appeared in "1390" late in the year 2018, during a telephone call from which Plaintiff was expelled by the judicial officer, on Defendants Contreras and Pahls' request that she leave the proceedings to consider a different 1390 Petition those

Defendants had recently filed against Plaintiff, while they went on with the scheduled business of 1390 with the judge. Defendants Hunley and Cochise County funded and otherwise facilitated Defendant Sacramento's appearance in many of the cases in which Defendant Sacramento harmed Plaintiff, at taxpayer expense, knowing that Sacramento could not legally be funded in *any* court-appointed roles she was nominally given. Defendant Sacramento, like Defendants Contreras and Pahl, deemed Plaintiff unworthy of living a life without constant litigation. Sacramento, likewise, never communicated with Plaintiff outside – or even inside – those systems, as Defendant Cochise County continued to illegally fund her participation in multiple cases for which she is legally unqualified for funding, commencing with 1390, and expanding well beyond that case until at least the year 2025, always to cause Plaintiff and her children harm, while ignoring them in favor of constant communications with Defendants Contreras and Pahl. Defendant Sacramento resides in Pima County, AZ.

## STATEMENT OF FACTS

10. To sufficiently plead Defendant Cochise County's liability at this stage, Plaintiff has attached Exhibit 1 hereto. This particular chain of electronic mail messages was commenced by a Superior Court Judicial Assistant (hereinafter, "JA") then-employed as Cochise County Division VII's judicial officer in the 1390 matter. By the time of the first communication from the JA in Exhibit 1, October 4, 2019, Defendant Cochise County had already unilaterally retaliated against Plaintiff for years, at Defendants' Contreras, Pahl, and Sacramento's ongoing requests. *Id., at* p.7. The JA boldly beginning the message chain by a flat announcement that Cochise County was imposing yet another prior restraint of parental and press speech in the 1390 matter indicates an already long-standing failure on Cochise County's part to properly train, screen, or supervise its governmental employees, even on Plaintiff's specific requests that the County stop denying Plaintiff her constitutional rights. Plaintiff forwarded the JA's message to the long-term Cochise County Superior Court Administrator days later to request that Cochise County and its Clerk resume providing Plaintiff first copies of

8

Court-issued, filed-stamped documents as required by law, reminding her that past requests for first copies distributed by the Clerk – as required of her office - had been ignored, and that it had already been at least one year since the last time the Clerk complied with those statutory and constitutional duties. *Id., p.6.* The Administrator, who is still employed by Cochise County, and has trained others in the violations subject to this Complaint, forwarded Plaintiff's request to the then-Operations Supervisor for the Clerk. *Id., at* 5-6. The next day, Plaintiff contacted the Clerk's Operations Supervisor to ask that he provide the First Amendment Intervenor the first copies Plaintiff was still awaiting at that particularly heavy period of the Contreras / Pahl / Sacramento litigation against Plaintiff, noting the increased costs and time expenditures required of Plaintiff due to the various unilateral orders and unilateral Cochise County policies in place at that time, requiring only Plaintiff to guess that something new may have been filed in 1390, requiring only Plaintiff to travel by car to go to the Clerk's office to ask permission to see any court documents that may have been filed into 1390, and requiring only Plaintiff to pay for first copies of 1390, as would be required of any non-parties seeking hard copies of documents from some other person's case, at $.50 / page. *Id., at* 5. Plaintiff again noted that the Clerk's failures to provide Plaintiff first copies in any format had been ongoing for about one year at that point, but Plaintiff also stated here that 1390 had no longer populated in public access that date, either, adding yet another obstacle to Plaintiff exercising her procedural and substantive Due Process Rights. *Id.* The long-time Clerk's Operations Supervisor responded by reiterating that Plaintiff would be charged for her "initial copy of a court generated document" if the Clerk believed it had previously provided Plaintiff first copies, seeming to communicate that if some other party placed Plaintiff on a distribution line, the Clerk would assume it would not be required to fulfill its duty to distribute file-stamped copies of Court-initiated documents. Exhibit 1 is proffered primarily to show how expansive Defendants Hunley and Cochise County's Plaintiff-only customs, policies and retaliation had already been entrenched at that time, through use of multiple employees over multiple departments. Defendants Pahl and Sacramento were copied throughout these communications, along with their staff members, various

9

members of the media involved in trying to follow 1390 despite the ongoing First Amendment retaliation, as well as Defendant Contreras, party David Morgan, Defendant Hunley, her Chief Deputy Clerk, and members of the Arizona State University's First Amendment Clinic, who were representing the First Amendment Intervenor at that time.  This particular exchange ended with Plaintiff, having just endured extreme, unjust losses the prior two years for calling for "911" on September 6, 2019 – matters to be further detailed during disclosure and discovery - expressing her extreme frustration from being forced out of motherhood through a court system that wouldn't so much as provide her first copies of court documents taking away her rights.  *Id., at* 1.  Plaintiff's "unladylike" language at *id.* resulted in additional forms of retaliation against the Mother-Plaintiff, in the form of ending the Mother-Plaintiff's career as an attorney.  The licensure retaliation will likewise be further detailed in the discovery and disclosure phase and, because the primary monetary losses due to the licensure retaliation accrued in the past six months, that retaliation is also subject to another dilatory, expensive, unfruitful Notice-of-Claim with different parties.  That portion of the retaliation will have to be further detailed in this Court after disclosure and discovery or after the licensure NOC is rejected by the governmental parties subject to it. For pleading purposes, Plaintiff asks this Court to keep top-of-mind that Cochise County's liability to Plaintff is personal to that governmental entity, it is purposeful, it is widespread, and it is long-standing.  To paraphrase a civil liberties attorney specializing in free speech issues[3]:

*an ignoring of the problems that working class Americans face is part of the issue . . . [37:46]*
*Well, the courts have been somewhat good . . . The problem with the Courts is that they move*
*slowly and, so, the administration can do quite a bit before anybody gets their day in Court*
*and what they do actually is they violate people's rights and then by the time you get the case*
*to Court they've moved on to something else. .. [38:20] I think it's a perpetual escalation,*
*yeah, and then, the way the administration double-downed on what happened here, I think is*
*a really bad sign.  If they had said, "You know what, this was a horrible situation.  We're*

---

[3] Statement of Jenin Younes, The Daily Show, S31; E5.  Commencing at 35:38. January 12, 2026.

*gonna investigate" - as they should have done. "We don't know what happened" that would be different but the fact they immediately decided . . . she [was undeserving of legal rights] and they're continuing with that, is, I would say, not a good sign at all.. . . I'm not actually super hopeful because whoever wins, we continue to see a denigration of our civil liberties. This administration's very blatant, but the one that came before, was kind of bad, too, that's why I was suing*

11. At times, the Defendants will explicitly "switch out" which Defendant will take the lead in chilling Plaintiff's rights to speech and court access. For example, in Exhibit 2, attached hereto, Defendant Contreras writes directly to Plaintiff and to Defendants Hunley, Pahl, and Sacramento. Defendant Contreras states that he is writing "on behalf of" Defendant Pahl to direct Defendant Hunley to change four already-transmitted Records on Appeal in pending appeals to Division Two of the Arizona Court of Appeals. Every Defendant in Exhibit 2 knows that once Defendant Hunley transmits an appellate record to a higher court, jurisdictional, practical, and a whole host of other considerations preclude Defendant Hunley from simply "supplement[ing]" higher courts' records to tack on whatever items someone tells a Clerk to "add" to that higher court's completed appellate record. Here, Defendant Contreras deems a Superior Court order issued that same day as "necessary for the Court to render a decision" should Plaintiff "fail" to "voluntarily withdraw" her appeals. Defendant Contreras further blurs who he believes has which rights to threaten Plaintiff in this way by directing Defendant Hunley to contact Defendant Pahl should Defendant Hunley have any questions about Defendant Contreras' directives to Defendant Hunley about how, precisely, Defendant Hunley should interfere with Plaintiff's right to access another court, over which Defendant Hunley has no authority, even *qua* Clerk. Defendants reach far beyond classic "chilling" of Plaintiff's speech at times, by openly conspiring against Plaintiff's petition and other First Amendment Rights. In this instance, Defendant Hunley did not immediately enacted Defendant's order to her to defy her constitutionally and statutory-limited duties, but she did immediately pick up the phone to ask the appellate court how best to threaten Plaintiff in the manner Defendant Contreras demanded that particular

day. Thirteen minutes after Defendant Contreras issued his threats and orders, Defendant Hunley wrote back to Plaintiff and the other Defendants to provide the other Defendants legal advice on how to best submit his irrelevant Superior Court document to most effectively suppress Plaintiff's rights. *Id., at* 1.

12. On June 11, 2024, Defendant Hunley demonstrated to Plaintiff that she knows precisely 1)the limits on her ability to restrict case access from Plaintiff and the public, 2)how to "unrestrict" a case when wrongfully sealed, or "restricted", 3)appropriate circumstances for her to contact the Arizona Court of Appeals, Division Two "just to be sure they don't seal the case.", 4)direct means for her to contact the Court of Appeals in appropriate circumstances, 5)that exhibits are, in fact, part of a trial court file, 6)that exhibits "travel" with a case on appeal, and 6)that her duties include transmitting "official" notices for cases in her Court. Exhibit 3.

13. By August 5, 2024, it was clear that even in the matter discussed in Exhibit 3, Plaintiff would have to file a motion in the appellate court to enjoy the privilege of reading the record of proceedings that Plaintiff initiated. Exhibit 4. The pattern of Defendants Hunley and Cochise County continuing to delay only Plaintiff's access to courts, if ever provided to Plaintiff, extends to Plaintiff seeking refuge from physical crimes committed against her in her own home, especially when Defendant Contreras appears at any such proceeding, which he did throughout this matter, to interfere with Plaintiff and their child's rights to protection, dominating ever proceeding in Superior Court. Exhibit 4.

14. On August 11, 2024, Defendant Hunley advised Plaintiff to file yet another Motion in Division Two, just as Plaintiff was forced to do in Exhibit 4. Exhibit 5. The Defendants all work diligently to suppress court information at all levels, with the effects of this unilateral censorship affecting Plaintiff's legal rights and ability to simply live free of fear, with an intact family in Cochise County.

15. By December 19, 2024, that same Court of Appeals issued a Due Process decision under the 1390 case, but discussing the continued, unilateral First Amendment suppression against Plaintiff by these Defendants, and its effects in multiple domains of Plaintiff's life. Exhibit 6. That Due Process Decision, 2 CA-CV 2024-0019-FC, noted

that Plaintiff cannot be denied access to 1390, and ordering that Judge Contreras pay Plaintiff's costs related to a Halloween, 2023 Order that (only) Plaintiff must destroy all forms of her 1390 and may no longer access it in any manner, and Order drafted by Defendants Contreras and Pahl, and simply signed, without notice or any opportunity to be heard, by the Superior Court. The Decision acknowledged the other constitutional grounds Plaintiff continued to argue and the vast scope of other matters that the violation of Plaintiffs' rights was continuing to have upon her. Id. None of these Defendants appealed 2 CA-CV 2024-0019-FC. Indeed, the individual Defendants argued that the Mandate should issue expeditiously so that they could continue the *ex parte* litigation they had been engaging in against Plaintiff for the prior year and a half in various cases numbers, including 1390. All Defendants ignored the preclusive effect that 2 CA-CV 2024-0019-FC would have on the ongoing and related matters in terms of *res judicata* and the mandate rule. Edmonds v. Smith, 922 F.3d 737, 740 (6th Cir. 2019).

16. By January 23, 2025, Defendants' retaliation against Plaintiff for securing 2 CA-CV 2024-0019 (Exhibit 6) was so severe and life-altering for Plaintiff and her children that she filed Exhibit 7 into that same appeal asserting her constitutional rights once again, as a matter necessary for her family's literal survival under Defendants' regime of First Amendment retaliation.

17. Within an hour of Cochise County opening for business that morning, another of its employees had already interfered with Plaintiff's filing of Exhibit 7, twice. This employee does not appear in Exhibit 1, but is another JA for Cochise County. Exhibit 8 shows one of that morning's purposefully confusing messages sent Cochise County to assert that Plaintiff's Exhibit 8 was filed in a different Court, in a different Division, than it actually was. Both matters the JA wrongfully identified that morning were additional trial court-level cases in which Defendant Contreras wrongfully interfered to retaliate against Plaintiff's exercise of her First Amendment Rights, on her own behalf, and on behalf of their shared child.

18. Defendant Pahl also used the pre-mandate period from 2 CA-CV 2024-0019 to explicitly, aggressively interject into other matters commenced by herself and

Defendant Contreras in an increasingly intrusive manner to ensure additional First Amendment retaliation would be imposed upon Plaintiff before the mandate would issue. Exhibit 9 demonstrates just one small way in which Plaintiff's lack of redress continues to blow back upon only her, and never any of the Defendants that impose the unconstitutional restrictions against Plaintiff in the first instance.

19. Defendants carried on with suppression of Plaintiff's rights, utterly undeterred by Plaintiff identifying the ongoing, severely harmful unconstitutional measures being imposed upon her and her children by these Defendants. Exhibit 10. Long-term Cochise County employees who facilitate the violations in this Complaint include, on page 1 thereof, Hardt, Casey, Renteria, Gordon, Victoria, Flores, and Serrano. Plaintiff has no intention to file claims against any individual employee. However, Claimant does intend to demonstrate Cochise County's liability for these Claims through the deployment of these and many additional employees, over a sustained period of time to harm Plaintiff. *Id.*

20. At times, including on Defendant Hunley attempts to blame others for her liability for these federal claims, particularly for suppression of her First Amendment Rights. Exhibit 11. For example, the extended period of time during which Defendant Hunley attempted to place the blame upon the Administrative Office of the Courts will be proven at trial to simply be a thinly-veiled blocking of Plaintiff's rights to access any court matter these Defendants involve themselves in to retaliate against Plaintiff's attempts to participate equally in court of law.

21. At other times, Defendant Hunley seeks and receives the backing of the Attorney General in helping her navigate the legal ramifications of the Clerk's Office retaliating against Plaintiff's assertion of her constitutional rights. Exhibit 12. This Exhibit will prove many of Plaintiff's factual claims in this Court and includes even more Cochise County employees involved in harming Plaintiff. This long, outrageous chain of emails ends with Defendant Hunley telling Plaintiff to "file a motion" if she wants to exercise any of her constitutional rights, and falsely claiming that Defendant Contreras' First Amendment Rights are also restricted.

22. Exhibit 13 reflects communications occurring shortly after those in Exhibit 12. Neither

14

of these were included in the underlying Notice of Claim as Exhibits, but both show more long-term employees of Cochise County involved in the County's liability, here. Exhibit 13 also shows how extensively the harms continue to affect Plaintiff as the state-level lower courts continue to extensively exacerbate the undue harms to Plaintiff and her children.

23. Exhibit 14 shows the Clerk and her employees continuing to change their minds as to whether they will comply with the mandate of 2 CA-CV 2024-0019-FC as late as July 2, 2024. Ultimately, Defendant Hunley decides that in order for Plaintiff to receive any hard copies of the 1390 restored to her, she will simply deny Plaintiff's party status altogether and treat Plaintiff as if she is a member of the general public. This allows Defendant Contreras to avoid any costs of compliance with 2 CA-CV 2024-0019-FC. Defendant Hunley also artificially imposed cut-off dates for Plaintiff's ability to read any first copies of items Defendants Contreras, Pahl, and Sacramento filed after Plaintiff was first ordered to destroy her copies of the 1390 file in the year 2023. Defendant Hunley also told Plaintiff to "file a motion" if she wanted authorization from Defendant Hunley to access "exhibits" constituting another means to prevent Plaintiff from filing for modification of any orders – such as child support – that require reference to prior evidence in order to file for modified orders.

24. Exhibit 15 is the Notice of Claim served to the government Defendants on July 9, 2025. Plaintiff asks this Court to consider the facts stated therein incorporated into this Complaint by reference. Similarly, to the extent it is possible to do so by means of this paragraph, Plaintiff hereby re-asserts the litigation hold contained in the NOC as all listed case numbers remain part and parcel of action against Defendants.

25. Defendant Sacramento spent all relevant time periods ensuring the removal of both Plaintiff's rights as well as those of the child she shares with Defendant Contreras.

26. Similarly, Cochise County employees spent all relevant time periods denying Plaintiff access to items such as recordings of court proceedings to ensure she cannot order transcripts for appellate purposes, nor to prove trial-level claims such as this one.

27. To be as clear as possible under this unique set of circumstances whereby the Defendants exclusively control access to the very evidence Plaintiff needs to litigate this

15

Complaint, Plaintiff alleges, with regard to Defendant Cochise County, that its own wrongful conduct caused Plaintiff's injuries. Cochise County caused Plaintiff's injuries via its decision-makers, via acts of its policy-makers, by practices against Plaintiff so persistent and widespread that they hold the force of law when it comes to Plaintiff. Cochise County – over a period covering Plaintiff's minor child's entire lifetime – failed to take actions that directly caused Plaintiff's injuries, including failures to properly employees, even when the need for training to prevent these injuries was repeatedly brought to Cochise County's attention, often directly by Plaintiff. Cochise County also failed to properly supervise its employees, also over this same time period, also when on request, and also when directly by Plaintiff to prevent these specific injuries. Cochise County's failures to train and supervise their employees often – and, again – over this entire time period - became conscious decisions *to* train and *to* supervise its employees in such as a manner as **to** (affirmatively) cause Plaintiff's injuries. Repeatedly, and to and through the date of this Complaint, Cochise County uses its policymakers' final decisions, often choosing to express its support for the reasoning its policy-makers use, to ratify and support its lower-level employee's decisions to continue injuring Plaintiff. Many of Cochise County's policies that have injured Plaintiff over this time period are specific to Plaintiff, and some of those are even written policies applicable to Plaintiff, only, as it is solely Plaintiff that has suffered this many layers of constitutional injuries imposed by this number of governmental and individual Defendants working against Plaintiff for this amount of time, after years of attempts at redress, with multiple higher authorities weighing in on Plaintiff's side. The unique set of circumstances resulting in Cochise County's liability to Plaintiff is evident in the purposefully confusing double-standards reflected in the Exhibits attached hereto and as discovery and disclosure proceed, Plaintiff fully expects to find even more blatant constitutional errors committed by Cochise County, itself, and also in conjunction with all other Defendants to this Complaint. Many of the Exhibits already demonstrate Cochise County continuing to struggle between failing to investigate these injuries and discipline responsible employees and deciding to investigate, but disciplining Plaintiff instead of its employees. Whether acting through its officials, its employees, or both, Cochise

County persistently deprives Plaintiff of her rights, a custom initially pressed by Defendant Contreras since at least the year 2009, and enacted by Cochise County over and over again. Cochise County is structured so that there are many policy-makers employed by it, in addition to the Clerk's independent authorities. These employees make policies against Plaintiff in their official capacities to cause unrelenting injuries to Plaintiff. Cochise County's patterns, practices, customs and informal policies are so widespread and recuring, and, frankly, vicious that the constitutional violations have already resulted in lifelong damages to Plaintiff. Nevertheless, Cochise County continues to affirmatively train new employees to cause Plaintiff constitutional injuries in woefully deliberate indifference to constitutional standards. Cochise County requires its employees to face these constitutional violations head-on, then cause more violations as a result of viewing Plaintiff's situation for exactly what it is.

28.    All Defendants gatekeep Plaintiff's rights, silence her, censor her, retaliate against her, and persistently punish Plaintiff for attempts to access courts and other public decision-making forums in meaningful, substantive ways, *before* substantive decisions are made. On the rare occasions Plaintiff succeeds in any manner in exercising her litigation rights, free speech or other constitutional rights, these Defendants further retaliate by further deprive Plaintiff of even more constitutional rights. The deprivations of Plaintiff's constitutional rights, particularly to procedural Due Process, have compounded over time – even in the face of higher authorities – such that Plaintiff's injuries have already profoundly altered the structure of Plaintiff's family, for generations. Plaintiff continues to suffer daily violations of her basic liberties, such as her constitutional rights to read and write, to speak, to associate, to respond to court actions, to raise her family, to live in a home, to travel, to earn a living, and to enjoy and sense of safety in her children's community without undue, unending government intrusion into every hour of Plaintiff's life. Proof of the very worst of these injuries continues to be withheld exclusively from Plaintiff, by these Defendants[4]. In addition to the possible abstract, "on-paper" constitutional indignities, Plaintiff continues to

---

[4] Examples such as official court recordings of Defendant Contreras using his time under oath in courtrooms to threaten his own child as retaliation for Plaintiff asking for notice of hearings affecting that child.

endure the extreme, practical consequences of Defendants' actions, resulting in extensive monetary damage as the Defendants continue to injure Plaintiff, under color of law.

## CLAIMS FOR RELIEF

**29.** Plaintiff requests this Court honor the policies underlying §1983, including compensating individuals injuried in this manner, but also by preventing these flagrant, continuing abuses of power by those purporting to act under color of state law. Robertson v. Wegmann, 436 U.S. 584, 591–92 (1978); Valenzuela v. City of Anaheim, 6 F.4th 1098, 1102 (9th Cir. 2021) ("Section 1983's goals include compensation for those injured by a deprivation of federal rights and deterrence to prevent future abuses of power.").

## Damages for Abuse of Process, Emotional Distress, and other compensable injuries caused by these Defendants

30. The willful acts of all Defendants in the purposefully unequal use of judicial, administrative, and executive processes against Plaintiff are improper and have caused Plaintiff extensive, compensable monetary damages.  The nature of these injuries, alone, merit punitive damages being awarded to Plaintiff.  Punitive damages should also be awarded in light of the *mens rea* of these particular Defendants, and the vulnerable victims of their ongoing violations of Plaintiffs' constitutional rights.  Defendants' collaboration, and their longstanding refusal to comply with the constitutional mandates of state-level courts who have already examined Plaintiff's injuries, passed upon them, and mandated compliance by these Defendants constitute two additional grounds for this Court to award punitive damages in a public, federal Court of law.  That these Defendants have continued to exacerbate Plaintiff's condition instead of obeying state-level decisions constitutes yet another ground for punitive damages, which Plaintiff hereby requests.

**Violations of U.S. Cons. Amend. I:  Free Speech; Unlawful Prior Restraint; Retaliation; *ultra vires***

31. At every turn, Defendants use even the possibility of Plaintiff's free speech is used by Defendants as both a means to further injure her, and as their justification to continue injuring Plaintiff.  Each and every proceeding in every branch of government into which Plaintiff is dragged starts, continues, and ends with harangues, monologues and outright threats to Plaintiff and her children, if Plaintiff speaks of that very proceeding.  The "speech" injuries cover multiple First Amendment clauses and the injuries are imposed against Plaintiff both inside and outside of proceedings with these Defendants.

**Violations of U.S. Cons. Amend. I:  Right to Petition the Government for redress of grievances; right to defend from such Petitions; Retaliation; *ultra vires***

32.  All Defendants have violated Plaintiffs' Supreme-Court recognized right to access courts.  *See, inter alia*, Bill Johnson's Rests v.NLRB, 461 U.S. 731, 742-43 (1983) (holding that the First Amendment protects "[t]he filing and prosecution of a well-founded lawsuit").  All Defendants have retaliated against Plaintiff when Plaintiff seeks means to participate in the governmental processes in which Plaintiff is named as a Defendant / Respondent / Appellee.  All Defendants prevent, chill, and punish Plaintiff when she requests bare-minimal governmental exercise of its powers to further her own interests, or those of her children.  Lozman v. City of Riviera Beach, No. 17-21, slip op. at 12 (U.S. June 18, 2018) (outlining constitutional protections against retaliation for filing a lawsuit).  Defendants continue to act in derogation of all of Plaintiffs' Petition rights, which extends to all departments of the government, including Petitioner's rights to participate in legislative procedures, administrative and other executive branch procedures, "and to courts, the third branch of Government." Cal. Motor Trans. Co. v. Trucking unlimited, 404 U.S. 508, 510 (1972).

33.  WHEREFORE, Plaintiff respectfully requests that this Court:

A.  Set this matter for jury trial and all associate deadlines therefore;

B.  Award Compensable and Punitive Monetary Damages to Plaintiff;

C.  Grant Plaintiff preliminary and injunctive relief, including, but not limited to immediate provision of unfettered electronic and hard-copy access to the (ten)10 cases numbers included in Plaintiff's litigation hold, including every document, and every audio-visual recording in the custody of all government Defendants.

D.  Declare that public officials and all remaining Defendants have deprived Plaintiff of her constitutional rights by "failing to create a procedural mechanism through which" Plaintiff can contest pursue her substantive rights through standard judicial, executive, and regulatory procedures in accordance with U.S. Const., Amdt. 14. Rev. Stat. §1979; 554 F.3.d 1170, 1201 (9th Cirs., 2009) 42 U.SC.C. §1983.

E.  Issue constitutional declarations regarding these Defendants depriving this Plaintiff of her free speech and other constitutional rights within the purview of this Court;

F.   Require specific performance of duties attendant to Plaintiff's rightful status as a party to the cases addressed herein, such as providing Plaintiff unfettered access to case documents, restoring the electronic and paper files addressed by 2 CA-CV 2024-0019-FC and the cessation of unilateral obstacles to accessing the courts in all named cases.

G.  Grant Plaintiff her costs, expenses, expert witness fees, and attorney's fees.  42 U.S.C. § 1988(b); (c).

H.  Grant Plaintiff liberal leave to Amend this Complaint as the discovery and disclosure process is anticipated to partially alleviate the very basis for this Complaint.

I.   Grant Plaintiff any and all further relief in furtherance of this Complaint and the interests of justice.

RESPECTFULLY SUBMITTED this 21st day of January, 2026.

Nancy Bourke
P.O. Box 244
(302) 792-7999
nbourke36@gmail.com
Plaintiff *pro se*